IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MATTHEW HARMANN,<br><br>             Plaintiff,<br><br>vs.<br><br>JAMES MARTIN "MARTY" ARGANBRIGHT, in his individual capacity; JEREMY BENNETT, in his individual capacity; and DANA MINTEER, in her individual capacity,<br><br>             Defendants. | CASE NO. 4:24-cv-336<br><br><br><br>COMPLAINT, REQUEST FOR INJUNCTIVE RELIEF, AND JURY DEMAND |

**COMES NOW** Plaintiff, Matthew Harmann, by his attorney, Robert Rehkemper, and for his Complaint, Request for Injunctive Relief, and Jury Demand, states the following:

## INTRODUCTION

Two conjoining cornerstones of America's constitutional democracy are the right of those seeking elected office to be free from political reprisals and retaliation from their political opponents, and the right of voters to elect their chosen representatives without interference from other government officials seeking that same political office.

When Matthew Harmann, a well-respected business owner, part-time Sheriff's Deputy, Volunteer Fire Chief and EMT, decided to seek election as Guthrie County Sheriff, it was impossible to conceive how drastically his career and reputation would be impacted by the very people he considered his friends and

1

colleagues. Rather than accept the rather common occurrence of a subordinate seeking to unseat the Sheriff, Defendants, Guthrie County Sheriff Marty Arganbright, Guthrie County Chief Deputy Sheriff Jeremy Bennett and Guthrie County Attorney Dana Minteer, engaged in an unconstitutional and coordinated campaign to impugn Harmann's sterling reputation in an effort to undermine his political campaign.

First, Defendants tried to knowingly and falsely accuse him of misconduct in office, misconduct they contended would require defense attorneys to be notified that his veracity should not be trusted in Court and therefore, in the court of public opinion. When this effort was rebuffed by an independent investigator, the trio undertook an unprecedented effort seeking to decertify Harmann as a police officer and thereby make him ineligible to serve as Guthrie County Sheriff. While the meritless decertification campaign was pending without any formal notifications being served on Harmann, Arganbright once again knowingly and falsely claimed to members of the community of voters that Harmann has, in fact, already been decertified as a police officer.

The Defendants' actions attempting to impugn Harmann's reputation and undermine his chances at election to Guthrie County Sheriff were and are in retaliation for Harmann's constitutionally protected right to run for political office. These actions were unconstitutional and unlawful and violated Harmann's rights under the First and Fourteenth Amendments to the United States Constitution and other state laws. This civil rights action seeks injunctive relief and damages.

## JURISDICTION AND VENUE

1.    The court has jurisdiction over the subject matter of this Complaint under the First and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

2.    This court has supplemental jurisdiction of the negligence claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

3.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1402(b) because the acts at issue in this lawsuit occurred within this District.

## PARTIES

4.    Plaintiff Matthew Harmann ("Harmann") is a part-time Deputy Sheriff with the Guthrie County Sheriff's Department and is running to become the duly elected Sheriff of Guthrie County in the November 2024 election. At all times relevant to this Complaint, Harmann was a citizen of the United States and a resident of Panora, Guthrie County, Iowa.

5.    Defendant James Martin "Marty" Arganbright ("Arganbright") is the current Sheriff of Guthrie County, Iowa, and is running for re-election to that position in the November 2024 election. At all times relevant to this Complaint, Arganbright was a citizen of the United States and a resident of Guthrie County, Iowa. As Sheriff, Arganbright had the duty to comply with the United States and Iowa Constitutions and to comply with all state and federal laws. At all times relevant to this Complaint, Arganbright was acting under color of law.

6.    Defendant Jeremy Bennett ("Bennett") is the Chief Deputy Sheriff with the Guthrie County Sheriff's Office. At all times relevant to this Complaint, Bennett was a citizen of the United States and a resident of Guthrie County, Iowa. As Chief Deputy Sheriff, Bennett had the duty to comply with the United States and Iowa Constitutions and to comply with all state and federal laws. At all times relevant to this Complaint, Bennett was acting under color of law.

7.    Defendant Dana Minteer ("Minteer") is the duly elected County Attorney for Guthrie County, Iowa. At all times relevant to this Complaint, Minteer was a citizen of the United States and a resident of Guthrie County, Iowa. As the duly elected County Attorney, Minteer had the duty to comply with the United States and Iowa Constitutions and to comply with all state and federal laws. At all times relevant to this Complaint, Minteer was acting under color of law.

## FACTUAL ALLEGATIONS

8.    Harmann was hired as a part-time deputy for Guthrie County Sheriff's Department on November 24, 2017, and currently serves as one of the Department's two K9 officers.

9.    As a Guthrie County Deputy, Harmann worked for Arganbright who is the duly elected Sheriff in Guthrie County.

10. Unlike most law enforcement officers, Harmann put himself through the Iowa Law Enforcement Academy at his own expense, graduating and becoming a certified peace officer in the state of Iowa on April 18, 2018.

11. In addition to his duties with the Guthrie County Sheriff's Department, Harmann is the owner of Harmann Excavating, an excavating company doing both residential and commercial work that is based out of Panora, Iowa.

12. Harmann is also an advanced EMT with Panora EMS and has been the Panora Volunteer Fire Chief since 2006.

13. As a Deputy Sheriff, Harmann has an exceptional service record with the Department.

14. After almost six years of service as a Deputy Sheriff, Harmann decided to throw his hat in the ring and on February 1, 2024, announced his candidacy for the Republican nomination for the office of Guthrie County Sheriff.

15. Prior to this announcement on February 1, 2024, Harmann had never received an adverse employment review, a work-related complaint and had never been subjected to any disciplinary proceedings with the Sheriff's Department.

16. Harmann was announcing his candidacy for Sheriff because he was unsettled by the lack of professionalism within the Department and dissatisfied with the lack of accountability mandated by the current Department leadership. Despite mulling over his decision to run for

Sheriff, Harmann worked as scheduled from December 17, 2023, through and including January 28, 2024.

17.    Also, despite his intention to seek Arganbright's job, Harmann refrained from making any public comments or statements that disparaged, offended, or disrupted Arganbright or the Guthrie County Sheriff's Department despite his reservations about the workings of the current Department.

18.    Harmann was the sole individual seeking the Republican nomination for Guthrie County Sheriff in the November 2024 election.  Harmann won the nomination and is the Republican nominee for Guthrie County Sheriff in the November 2024 general election.

19.    Harmann announced his candidacy on February 1, 2024, in the social media platform Facebook via a public positing accessible to any person using the social media platform.

20.    On February 2, 2024, Harmann issued a press release announcing his intention to run for Guthrie County Sheriff.

21.    Harmann's press release was published by the Times Vedette on February 2, 2024.

22.    The Times Vedette is a free bi-weekly newsletter sent via email and text messaging each Tuesday and Friday to a list of subscribers.  Others can access the Times Vedette at www.gctimesnews.com.

23.    In the immediate aftermath of Harmann's announcement, Arganbright, Bennett, and Minteer were in communication with one another regarding Harmann's candidacy announcement.

24.    Arganbright, Bennett, and Minteer communicated electronically regarding Harmann's candidacy announcement and the threat it posed to Arganbright's and Bennett's positions and Minteer's effectiveness as the Guthrie County Attorney.

25.    Arganbright, Bennett, and Minteer agreed to work together to discredit Harmann and interfere with Harmann's election campaign.

26.    The agreement between Arganbright, Bennett, and Minteer was to use inaccurate and/or false allegations and accusations of misconduct against Harmann to discredit him and therefore undermine his candidacy for Guthrie County Sheriff.

27.    Pursuant to their conspiracy, County Attorney Minteer refused to investigate the merits of allegations made by Arganbright and Bennett against Harmann.

28.    Minteer went so far as to refuse to even contact or communicate with Harmann regarding the substance of the false/misleading accusations made by Arganbright and Bennett against him.

29.    In fact, Minteer failed to allow Harmann to provide any input to her office before acting upon the false accusations against Harmann that were made by Arganbright and Bennett.

30.    Instead, Minteer agreed to issue a *Giglio* Notice[1] in all criminal cases in which Harmann could be a witness based upon the false accusations of misconduct made by Arganbright and Bennett against Harmann.

31.    Minteer, Arganbright, and Bennett were aware that a *Giglio* Notice impugning the credibility of Harmann would be circulated within the legal and law enforcement community and would have a profound, adverse impact on Harmann's law enforcement career.

32.    Neither Minteer nor her office have any written policies or procedures regarding whether an officer is subject to a *Giglio* Notice.

33.    By providing the *Giglio* Notice without investigation, Minteer set the conspiracy to discredit and interfere with Harmann's political campaign into motion.

34.    On February 2, 2024, at 3:43 p.m., Minteer sent Harmann an email stating: "I've attached a letter that will be included in discovery in any cases you're involved in after December 16, 2023…"

35.    The letter attached to the email stated:

> "Pursuant to Rule 5.608(b) of the Iowa Rules of Evidence, this letter is to inform you that while on-duty, Deputy Harmann, a potential witness in this case, is believed to have provided false information to his colleagues during the course of a potential criminal investigation on or about December 16-17, 2023.    Namely, this false information pertained to the whereabouts/conduct of an off-duty Guthrie County Sheriff's Deputy. Deputy Harmann is still employed with the Guthrie County Sheriff's Office at this time."

---

[1] The United States Supreme Court decision of *Giglio v. United States*, 405 U.S. 150 (1972) held that the prosecution is required to disclose evidence adversely and materially affecting the credibility of a witness when such evidence is material to the outcome of the trial.

36.   Iowa Rule of Evidence 5.608(b) referenced in Defendant Minteer's *Giglio* Notice letter is a rule of evidence authorizing the use of specific instances of conduct to attack a witness's character as being untruthful.

37.   In fact, Minteer's *Giglio* Notice was provided in writing to Attorney David Newkirk of Des Moines, Iowa, on February 9, 2024.

38.   On February 7, 2024, Bennett, at the direction of Arganbright, authored a written notice to Harmann notifying him of an "Administrative Investigation" arising out of an incident that took place on December 17, 2023. (hereafter "*Administrative Investigation Notice*").

39.   The Administrative Investigation Notice accused Harmann of three separate professional violations stemming from his on-duty response to an incident taking place on the night of December 16/17, 2023.

40.   The Administrative Investigation Notice placed Harmann on unpaid administrative leave and was dated February 7, 2024, just six days after Harmann announced his candidacy for Arganbright's job.

41.   Although it was dated February 7th, the Administrative Investigation Notice was not post-marked until February 9, 2024.

42.   Three weeks later, on February 26, 2024, Arganbright himself, sent Harmann an e-mail informing him of the nature of the investigation and scheduling an interview with Jon Thomas ("Thomas") of Workforce Solutions on February 27, 2024.

43. Thomas was hired by Guthrie County Sheriff's Department and Guthrie County to investigate Arganbright and Bennett's allegations against Harmann.

44. Arganbright and Bennett falsely told Thomas that Harmann had been placed on administrative leave on January 7, 2024.

45. To support their misrepresentation to Thomas, Arganbright and Bennett created a falsified version of the original Administrative Investigation Notice, dating it January 7, 2024.

46. Bennett's signature on the falsified January 7, 2024 Administrative Investigation Notice is distinctly different than the original Administrative Investigation Notice dated February 7, 2024.

47. Harmann was not placed on administrative leave on January 7, 2024.

48. Arganbright and Bennett made the false representation that Harmann was placed on administrative leave on January 7, 2024, to make it appear as their disciplinary action had preceded Harmann's candidacy announcement.

49. Despite the allegations against him being false, Harmann fully cooperated with Thomas' investigation.

50. Harmann was interviewed by Thomas on February 27, 2024, under the full protections and provisions of Iowa Code section 80F.1.

51. Thomas concluded the formal administrative investigation in April of 2024, finding no policy, ethical, professional, or legal violations by Harmann.

52. Thomas' conclusions were provided to Arganbright prior to Thomas authoring his written report dated May 8, 2024.

53. Despite an independent investigative report clearing Harmann of any professional misconduct or wrongdoing, Arganbright escalated his efforts to unconstitutionally and unlawfully silence his political opposition.

54. Arganbright did not file any disciplinary proceedings against Harmann internally with the Guthrie County Sheriff's Department.

55. The Guthrie County Sheriff's Department did not make a specific adverse, employment related written findings concerning Harmann, arising out of Arganbright and Bennett's allegations.

56. The Guthrie County Sheriff's Department did not take any final action against Harmann's employment with the Guthrie County Sheriff's Department.

57. As of filing this Complaint, Harmann is still employed by the Guthrie County Sheriff's Department.

58. Harmann also still retains possession of his Guthrie County Sheriff's Office marked squad vehicle.

59. Additionally, Harmann retains possession of, and continues to care for, Guthrie County Sheriff Department's, K-9 named Dart.

60. Harmann still retains possession of his badge, service belt, and weapon.

61. Despite the independent investigation clearing Harmann of any professional misconduct and despite no final disciplinary action being imposed by the

Guthrie County Sheriff's Department against Harmann, in May of 2024, Bennett, at the direction of Arganbright, referred Harmann to the Iowa Law Enforcement Academy requesting that Harmann be de-certified as a peace officer in the state of Iowa.

62. The referral of Harmann to the Iowa Law Enforcement Academy by Arganbright and Bennett recommending de-certification was done in bad faith without a reasonable basis to believe Harmann engaged in any misconduct worthy of such a referral.

63. Instead, this referral was undertaken by the Defendants as a second attempt to silence and eliminate their political rival.

64. In support of their retaliatory request to the Iowa Law Enforcement Academy to de-certify Harmann, Arganbright and Bennett knowingly and falsely represented that Harmann had been on administrative leave since January 6, 2024.

65. This time, Arganbright and Bennett went even further in their unconstitutional scheme and created a third version of the original Administrative Investigation Notice.

66. In an attempt to obfuscate their retaliatory motives, Arganbright and Bennett now changed the date on this third version of the Administrative Investigation Notice submitted to the Iowa Law Enforcement Academy, from February 7, 2024, to January 6, 2024, a date prior to Harmann announcing his candidacy for County Sheriff.

67.  The third version of the Administrative Investigation Notice also has a distinctly different Bennett signature than the first two versions.

68.  As of the date of filing this Complaint, Harmann has still not been served with any official notices by the Iowa Law Enforcement Academy regarding any potential preliminary findings by the Council.

69.  In fact, a contested case hearing has not even been scheduled.

70.  As of this date, Harmann is still a certified peace officer in the state of Iowa.

71.  Despite there being no hearing or final decision by the Iowa Law Enforcement Academy, and despite the fact that realistically, there may never be a hearing or a decision, Arganbright continuously, repeatedly and publicly informs members of the Guthrie County community that his political rival, Harmann, will be de-certified by the Iowa Law Enforcement Academy.

72.  In fact, Arganbright went even further, verbally representing to community members that Harmann has already been de-certified by the Iowa Law Enforcement Academy.

73.  Arganbright knew and knows that this representation was false when he made it.

74.  Furthermore, in an effort to secure endorsements, Arganbright has also verbally represented to his political allies that Harmann has already been

de-certified, or would imminently be de-certified by the Iowa Law Enforcement Academy.

75.    This was once again, a knowingly false statement by Arganbright.

76.    In August and September of 2024, Arganbright, escalated his campaign of political retaliation against Harmann by illegally releasing statutorily confidential and protected information regarding Harmann and another Guthrie County Sheriff's Deputy to members of the public.

77.    On August 12, 2024, at Arganbright's direction, Breanna Mink ("Mink"), a known Arganbright supporter, made a public records request to the Guthrie County Sheriff Department requesting statutorily confidential information related to Harmann and another Guthrie County Sheriff Deputy.

78.    Arganbright released the requested statutorily confidential information to Mink without notifying Harmann or any other individual protected by the statutory confidentiality.

79.    At Arganbright's direction, and in furtherance of his campaign to discredit Harmann, Mink disseminated the statutorily confidential information to other members of the public, including but not limited to fellow Arganbright political supporter Kassandra Sheeder ("Sheeder"). Based upon this confidential information, a Letter to the Editor was published in the Perry News, signed by Sheeder.

80.    The Letter to the Editor was published on August 30, 2024, and publicly redisclosed information that is and was subject to the confidentiality provisions of Iowa Code § 80B.13A(5).

81.    The Sheeder letter contains multiple factual inaccuracies, intentionally done in a way to impugn the credibility of Harmann and damage his chances of winning the election.

82.    To date, that letter, according to Perry News' website, has been viewed by 7,008 people.[2]

83.    To date, Arganbright and his political supporters continue to represent to members of the public that Harmann has been or will certainly be decertified by the Iowa Law Enforcement Academy.

<u>**LAW COMMON TO ALL COUNTS**</u>

84.    At all times material hereto, the law was clearly established that the First Amendment prohibits government officials from discriminating and retaliating against public employees based upon political affiliation and opposition.

85.    At all times material hereto, the law pertinent to all claims made herein was clearly established.

86.    At all times material hereto, the law was clearly established, placing Arganbright, Bennett, and Minteer on notice that their conduct described

---

[2] https://theperrynews.com/letter-to-the-editor-harmann-not-fit-for-guthrie-county-sheriff-job/ Last accessed, 9/17/2024

above violated the clearly established constitutional rights of Harmann as well.

## DIVISION I
### First and Fourteenth Amendment (42 U.S.C. § 1983)
### Political Retaliation and Discrimination
### Defendant Arganbright

87.    Harmann incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

88.    At all times material hereto, Arganbright was acting under color of state law.

89.    The First Amendment to the United States Constitution guarantees individuals the right to associate and express themselves on matters of public concern without fear of discrimination or reprisal from the government.

90.    The First Amendment prohibits government actors from taking adverse employment action against government employees because of their association and expression of matters of public concern.

91.    The First Amendment is made applicable to state actors through the Fourteenth Amendment to the United States Constitution.

92.    Harmann engaged in conduct protected by the First Amendment, specifically, the right to run for the elected, politically partisan position of County Sheriff.

93.    Harmann spoke out publicly and announced his candidacy as the Republican candidate for Guthrie County Sheriff on February 1, 2024.

94.  In his Candidacy Announcement, Harmann expressed his desire to ensure reliable public safety through efficiently managed budget oversight which he described as essential characteristics of being an effective Sheriff.

95.  Arganbright has been previously publicly criticized for his lack of effective budget management during his tenure as Sheriff.

96.  Harmann is a registered member of the Republican Party and is the Republican candidate for Guthrie County Sheriff.

97.  Arganbright is a registered member of the Democratic Party and is the Democratic candidate for Guthrie County Sheriff.

98.  Harmann's participation in electoral activities as a candidate for a partisan elected position is protected under the First Amendment.

99.  Harmann's speech related to his participation in electoral activities as a Republican candidate for a partisan elected position is protected under the First Amendment.

100.  Harmann's participation in electoral activities while employed as a Deputy with the Guthrie County Sheriff's Office is also statutorily protected pursuant to Iowa Code section 80F.1, subsections 14 through 16.

101.  Iowa Code section 80F.1, subsections 14 through 16, statutorily guarantees a peace officer in the state of Iowa the right to engage in political activity without adverse employment action being taken against them.

102.  Harmann's conduct of running for Guthrie County Sheriff does not violate the federal Hatch Act, 5 U.S.C. § 1501 *et seq.*

103.  Arganbright initiated adverse employment actions against Harmann in retaliation for his protected speech activity and political affiliation with the Republican party.

104.  Arganbright made false allegations of misconduct against Harmann in retaliation for Harmann's protected speech activity and political affiliation with the Republican party.

105.  Arganbright suspended Harmann without pay in retaliation for his protected speech and political activity.

106.  Arganbright initiated the action before the Iowa Law Enforcement Academy to de-certify Harmann as a peace officer in the state of Iowa, in retaliation for Harmann's protected speech and political activity.

107.  Arganbright continues to openly use the pending de-certification action before the Iowa Law Enforcement Academy as his campaign strategy to convince members of the voting public not to vote for Harmann.

108.  Arganbright openly uses the pending de-certification action against Harmann before the Iowa Law Enforcement Academy to secure political endorsements in furtherance of his campaign for re-election as Guthrie County Sheriff.

109.  Arganbright's conduct violates Harmann's constitutional rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

110.  As a direct and proximate result of Arganbright's conduct, Harmann suffered irreparable injury to his constitutional rights and personal liberties

guaranteed by the First and Fourteenth Amendments to the United States Constitution.

111.   As a result of Arganbright's conduct, Harmann suffered the compensatory damages as set forth in Division VI.

112.   Arganbright's conduct is excessive, done with actual malice toward Harmann, and with a willful and wanton indifference to the Constitutional and statutory rights of Harmann, justifying an award of exemplary, punitive damages against Arganbright.

113.   Harmann further seeks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**DIVISION II**
**First and Fourteenth Amendments (42 U.S.C. § 1988)**
**Conspiracy to Commit Political Retaliation and Discrimination**
**Defendants Arganbright, Bennett, and Minteer**

114.   Harmann incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

115.   At all times material hereto, Arganbright, Bennett, and Minteer were acting under color of state law.

116.   Upon learning of Harmann's candidacy against Arganbright for Guthrie County Sheriff, Arganbright, Bennett, and Minteer entered into an agreement to engage in political retaliation and discrimination against Harmann, in violation of his First and Fourteenth Amendment rights.

117.   Arganbright committed overt acts in furtherance of the conspiracy, including but not limited to:

a. Falsely representing that Harmann made false statements during the course of a potential criminal investigation arising out of the December 16/17, 2023, incident;

b. Suspending Harmann without pay;

c. Falsely representing to Thomas that Harmann was placed on administrative leave on January 7, 2024.

d. Refusing to reinstate Harmann after Thomas' investigation cleared him of any professional misconduct.

e. Authorizing and/or instructing Defendant Bennett to initiate a de-certification action against Harmann before the Iowa Law Enforcement Academy, knowing that the independent, County-funded investigation by Thomas absolved Harmann of any legal, ethical or professional wrong-doing;

f. Falsely representing or authorizing Bennett's false representation to the Iowa Law Enforcement Academy that Harmann was placed on administrative leave on January 6, 2024.

g. Falsifying or authorizing the falsification of the Administrative Investigation Notice, submitted to the Iowa Law Enforcement Academy, to represent that it was created on January 6, 2024.

h. Continuing to utilize the pending de-certification action against Harmann as campaign propaganda in support of his bid for re-election as Guthrie County Sheriff.

i.  Knowingly disclosing statutorily confidential internal investigative materials to political supporters with the intention of disseminating and publishing the confidential information.

118. Bennett also committed overt acts in furtherance of the conspiracy, including, but not limited to:

a.  Falsely representing that Harmann made false statements during the course of a potential criminal investigation arising out of the December 16/17, 2023 incident;

b.  Falsely representing to Thomas that Harmann was placed on administrative leave on January 7, 2024.

c.  Falsifying the Administrative Investigation Notice submitted to Thomas representing that it was created on January 7, 2024.

d.  Initiating a de-certification action against Harmann before the Iowa Law Enforcement Academy, knowing that the independent, County-funded investigation by Thomas absolved Harmann of any legal, ethical or professional wrong-doing;

e.  Representing to the Iowa Law Enforcement Academy that Harmann was placed on administrative leave on January 6, 2024.

f.  Falsifying the Administrative Investigation Notice, submitted to the Iowa Law Enforcement Academy, to represent that it was created on January 6, 2024.

119.   Minteer also committed overt acts in furtherance of the conspiracy, including but not limited to:

    a.   Emailing Harmann representing that she would notify all criminal defendants whose cases Harmann assisted with that she did not believe he was a credible witness or officer.

    b.   Issuing a notice to a defendant in a criminal prosecution in which Harmann was an investigative officer, impugning Harmann's integrity and credibility;

    c.   Representing to attorneys and criminal defendants that Harmann provided false information pertaining to the whereabouts/conduct of an off-duty Guthrie County Sheriff's Deputy during the course of a potential criminal investigation on or about December 16-17, 2023.

    d.   Refusing to retract the aforementioned statements and notices despite having received an independent investigative report absolving Harmann of any professional misconduct.

120.   As a result of Arganbright, Bennett, and Minteer's conduct, Harmann suffered compensatory damages as set forth in Division VI.

121.   Arganbright, Bennett, and Minteer's conduct is excessive, done with actual malice toward Harmann, and with a willful and wanton indifference to the Constitutional and statutory rights of Harmann, justifying an award of exemplary, punitive damages against all three Defendants.

122. Harmann further seeks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**DIVISION III**
**<u>Iowa Code section 80F.1(13)</u>**
**Defendants Arganbright, Bennett, and Minteer**

123. Harmann incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

124. Harmann is and was an "officer" as defined in Iowa Code section 80F.1(1)(f) and was at all times material hereto, protected by the provisions of Chapter 80F of the Iowa Code.

125. Iowa Code section 80F.1(15) guarantees, "[a]n officer shall have the right, as any other citizen, to engage in political activity except while on duty as long as the officer's political activity does not violate the federal Hatch Act, 5 U.S.C. §1501 et seq."

126. Iowa Code section 80F.1(16) guarantees, "[a]n officer shall not be discharged, disciplined, or threatened with discharge or discipline in retaliation for exercising the rights of the officer enumerated in this section."

127. Iowa Code section 80F.1(13) provides, "[a]n officer shall have the right to bring a cause of action against any person, group of persons, organization, or corporation for damages arising from the filing of a false complaint against the officer or any other violation of this chapter including but not limited to actual damages, court costs, and reasonable attorney fees."

128.    The aforementioned conduct of Arganbright, Bennett, and Minteer violated

Iowa Code sections 80F.1(15) and (16).

129.    As a result of Arganbright, Bennett and Minteer's conduct, Harmann

suffered compensatory damages as set forth in Division VI.

**DIVISION IV**
**Felonious Misconduct in Office**
**Defendants Arganbright and Bennett**

130.    Harmann incorporates by reference the allegations in the paragraphs above

as though fully set forth herein.

131.    Arganbright and Bennett are public officers or employees as used in Iowa

Code section 721.1

132.    While confidential under Chapter 22.7 of the Iowa Code, the

Administrative Investigation Notice issued to Harmann is a public record as

defined in Iowa Code section 22.1(3)(a).

133.    Arganbright and Bennett individually, and/or through joint conduct,

falsified the date on Harmann's February 7, 2024 Administrative

Investigation Notice on two separate occasions. One to Thomas with a

falsified date of January 7, 2024, and one to the Iowa Law Enforcement

Academy, with a falsified date of January 6, 2024.

134.    Arganbright and Bennett, individually, and/or through joint conduct, made

false entries and provided false information to the Iowa Law Enforcement

Academy, a government body, representing that Harmann was placed on

administrative leave on January 6, 2024.

135.   Arganbright and Bennett falsified the date on the Administrative Investigation Notices to cover-up their illegal, political retaliation and discrimination against Harmann.

136.   The falsified records are maintained in Harmann's Guthrie County Sheriff Department's personnel file.

137.   The falsified records are also maintained in the Iowa Law Enforcement Academy's file related to Harmann.

138.   The falsified records are records being relied upon and utilized by the Iowa Law Enforcement to evaluate and prosecute Harmann for false claims of misconduct initiated by Arganbright and Bennett.

139.   Harmann is a member of the class of persons Iowa Code section 721.1 is designed to protect.

140.   Harmann's personnel file now contains falsified records and documents because of Arganbright and Bennett's falsification of the Administrative Investigation Notification date.

141.   Harmann suffered the damage that Iowa Code section 721.1 is designed to prevent.

142.   Pursuant to Iowa Code section 611.21 and *Hall v. Montgomery Ward* Co, 252 N.W.2d 421, 423 (Iowa 1977), Harmann has a statutory right to civil remedies for the harm caused by this violation.

143.   As a result of Arganbright and Bennett's conduct, Harmann suffered compensatory damages as set forth in Division VI.

**DIVISION V**
**Violation of 80F.1(20)**
**Defendant Arganbright**

144. Harmann incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

145. Iowa Code section 80F.1(20) mandates in relevant part: "The employing agency shall keep an officer's statement, recordings, or transcripts of any interviews or disciplinary proceedings, and any complaints made against an officer confidential unless otherwise provided by law or with the officer's written consent."

146. Arganbright, without legitimate legal authority or Harmann's written consent, released narrative reports of Bennett created pursuant to Guthrie County Sheriff Department's internal investigation, to Mink.

147. Arganbright, without legitimate legal authority or Harmann's written consent, released the internal investigation reports authored by Thomas related to Harmann as well as the other Guthrie County Sheriff Deputy, to Mink.

148. The publicly released material specifically reference, quote and rely upon statements provided by officers, including Harmann, that fall within the confidentiality protections of Iowa Code section 80F.1(20).

149. Arganbright provided those documents to Mink knowing her intention of further disseminating them to Sheeder, and ultimately the press and public.

150.    A bastardized version of the contents of the statutorily confidential materials disclosed by Arganbright have now been published to the public and cannot be retracted or rescinded.

151.    As a result of Arganbright's conduct, Harmann suffered compensatory damages as set forth in Division VI.

**DIVISION VI**
**Requested Relief**

**WHEREFORE**, Plaintiff Matthew Harmann, respectfully requests judgment against all Defendants as follows:

a.    Compensatory damages as to all Defendants, including but not limited to:

i.    Deprivation of his constitutional rights;

ii.    Lost wages and lost income;

iii.    Injury to his professional and personal reputation and good standing in the community; and

iv.    Mental pain and suffering – past and future;

b.    Punitive damages as to all Defendants;

c.    Reasonable attorney fees and costs;

d.    Enjoin Defendants temporarily and then permanently from:

i.    Publicly making factual false statements regarding Harmann's status as a certified peace officer in the state of Iowa related to the allegations made by Arganbright and Bennett against Harmann to the Iowa Law Enforcement Academy; and

    ii. Expunge from Harmann's disciplinary record any reference regarding the knowingly false efforts to have Harmann decertified as a police officer by the Iowa Law Enforcement Academy.

  e. Such other relief as may appear just and appropriate.

## JURY DEMAND

Plaintiff, Matthew Harmann, hereby demands a jury trial as to all claims stated in this Complaint.

Respectfully Submitted,

GOURLEY, REHKEMPER,
& LINDHOLM, P.L.C.

By: /s/ *Robert Rehkemper*

_____
Robert G. Rehkemper,  AT0006553
440 Fairway, Suite 210
West Des Moines, IA 50266
Telephone No. (515) 226-0500
Email:  rgrehkemper@grllaw.com
**ATTORNEY FOR PLAINTIFF**

Original Filed via CM/ECF.