


# Workforce Solutions

## *Guthrie County Sheriff's Office Internal Investigation of Deputy Matt Harmann*

March 2024

Findings presented by: Jon Thomas, Owner/Principal of Workforce Solutions




## I. PURPOSE OF THE INVESTIGATION

On December 17, 2023 at approximately 0000 hours, Deputy Harmann (*"Harmann")* responded as a secondary officer to assist Deputy Humberg (*"Humberg")* with locating an road utility vehicle which had pulled into [redacted], a property located in Eastern Guthrie County and the primary residence of Harmann.

Humberg was attempting to make contact with the operator of the utility vehicle after observing the vehicle lose a bucket of deer meat out of the rear cargo area approximately one and a half (1.5) miles South of this location. Unable to locate the vehicle, Humberg called Harmann and advised what he had, Harmann advised Humberg of a path adjacent to his property commonly used by vehicles and told him to check that area. Humberg was able to locate a utility vehicle on Harmann's property and observed a subject wearing orange run from the vehicle. Upon the arrival Officer Derek Porsch (*"Porsch")* of the Panora Police Department, Humberg and Porsch approached the utility vehicle with weapons drawn based upon Humberg's belief the occupants may be poaching. Upon making contact with the vehicle, Humberg and Porsch located an empty gun case and an empty can of an alcoholic beverage. Humberg was able to locate an Iowa Department of Natural Resources registration sticker for the utility vehicle which Guthrie County Communications was able to check and determine the owner of the vehicle was Taylor Wheatley (*"Wheatley"),* a deputy sheriff with the Guthrie County Sheriff's Office. Humberg made several attempts to contact Wheatley by phone but was unsuccessful, later learning he was calling Wheatley's work cell phone rather than his personal cell phone number.

When Humberg first advised he was looking for the utility vehicle, Harmann was geographically located on the far west side of the county near the Audubon County line on Highway 44. Harmann began to drive towards Humberg's location and received a phone call from Humberg about the incident and Harmann advised Humberg of the area on his property commonly used by utility vehicles and advised him to check there. Harmann then receives a call from Wheatley asking what Humberg is doing. Harmann advises Wheatley that Humberg had a utility vehicle lose some deer meat and he was attempting to locate the vehicle. Harmann then stopped at the sheriff's office to drop off civil papers he had been attempting to serve earlier in the night. While leaving the sheriff's office, Guthrie County Communications had returned the registration check to Humberg, advising the vehicle belonged to Wheatley.




Upon Harmann's arrival, Porsch went back into service and returned to Panora. Harmann and Humberg proceeded to the utility vehicle so Harmann could examine the area. Harmann immediately recognized the utility vehicle as Wheatley's as the vehicle had been used earlier in the day during a deer hunting session in which Harmann and Wheatley were together along with other members of the Panora community.

Harmann and Humberg attempted to work through the problem together. The utility vehicle was inspected and the exhaust was cold to the touch. This raised some question as to whether or not this was the actual utility vehicle Humberg has observed. Harmann also made mention that this didn't make sense because Wheatley had stated earlier in the week, he was going to a wedding tonight, raising the question as to who was actually driving the utility vehicle if not Wheatley.

After checking the immediate area and being unable to locate anyone, Harmann and Humberg had a discussion about exactly what this incident. After determining no traffic stop was initiated, no verbal commands disobeyed and that Humberg's actions was more of a community caretaking action rather than an enforcement action, Harmann secured Wheatley's utility vehicle in one of his buildings on the property.

Humberg and Harmann then checked a few other areas on the property but were unable to locate the driver of the utility vehicle. Humberg went back into service and left the area.

At approximately 0223 hours, Humberg received a phone call from Wheatley admitting to Humberg that he was operating his utility vehicle and apologizing for his actions. Wheatley explained he panicked when he saw the marked patrol car and didn't want to get in trouble. Humberg then had an additional conversation with Wheatley a short time later at which time he advised Wheatley to self-report this incident to the administration as Humberg was not to lie for Wheatley. Wheatley told Humberg he would do this.

The purpose for this investigation rests with Harmann's behavior and if he interfered or provided false information at any point to Humberg regarding Wheatley's involvement in this incident. Further speculation existed about the fact that Harmann may have even driven Wheatley home after Humberg left the area, which as a result of this investigation is a confirmed fact.




Harmann was provided a notice of potential policy violations via e-mail through his attorney, initially on January 7, 2024 and an additional notice on February 26, 2024. Potential policy violations relating to Harmann's conduct include:

1. Chapter 2 – Professional Conduct & Responsibilities
   - 1.1 Cooperation
   - 1.2 Code of Ethics
2. Chapter 3 – General Guidelines
   - 2.1 General Conduct
   - 2.2 Overall Conduct
   - 2.3 False Statements
3. Chapter 12 – Conduct
   - 3.1 Conduct Unbecoming an Employee
4. Chapter 24 – Policy Offenses – Discipline
   - 4.1 Immoral Conduct
   - 4.2 Any conduct unbecoming a member of this department.
   - 4.3 Failure to give statements concerning the true facts in any case or by changing statements or testimony to avoid the truth or facts.
5. Chapter 60 – Body Worn Cameras

## II. PARTIES TO THE INVESTIGATION

- Deputy Matt Harmann – Guthrie County Sheriff's Office
- Deputy Taylor Wheatley – Guthrie County Sheriff's Office
- Deputy Caleb Humberg – Guthrie County Sheriff's Office
- Officer Derek Porsch – Panora Police Department

## III. HARMANN'S BACKGROUND

Harmann attended the Iowa Law Enforcement Academy in 2018. Harmann paid for his own tuition through the academy. Upon completion of the academy, Harmann describes having very little field training through Guthrie County.

Following a significant critical incident within the Guthrie County Sheriff's Office in 2019, Harmann worked regularly to help cover shifts while manpower was severely diminished. Once staffing returned to normal, Harmann continued to work every other weekend. Harmann currently serves as a K9 officer with an assigned dog and take-home vehicle.




Harmann is self-employed and operates an excavating company as his primary form of employment.

## IV. INTERVIEWS

### A. Harmann Interview

Harmann was interviewed on February 27, 2024 at the law office of Smith & Mills Law in West Des Moines, Iowa with his attorney Skylar Limkemann. Harmann was provided the notice of his investigation. The interview was scheduled through Harmann's attorney to ensure compliance with Iowa Code 80F and his right to representation during the investigatory process. The interview was conducted in a conference room at the law office and was audio recorded. The interview began at approximately 1406 hours and concluded at 1509 hours. Harmann was advised both verbally and in writing of his employee rights and advisory and acknowledged receipt of these rights and advisory with his signature.

The interview began with an overview of Harmann's employment in law enforcement and then proceeded directly to questions relating to his conduct relating to the incident involving Wheatley.

Harmann provided background information relating to his activities earlier in the day prior to beginning his tour of duty. Harmann had gone deer hunting earlier in the day with a group of men from the Panora area, to include Wheately. Harmann normally worked from 1400 hours until 0000 hours but had spoken with Deputy Todd Thorn (Guthrie County Sheriff's Office) and made arrangements not to begin his tour of duty until 1600 hours so he could hunt with the group longer. During the course of the deer hunting activity, Wheatley's utility vehicle was used by the hunting party to transport deer and discard waste during the processing portion of the day. Harmann had left the group at the Van Houten residence, located just outside of Panora, following the hunting activities so he could go to work.

Harmann began his tour of duty at 1600 hours and drove to the Guthrie County Sheriff's Office where he picked up civil papers to attempt to serve. At approximately 1730 hours, Harmann stopped back at the Van Houten property to see how the processing was going. Wheatley was not present at the Van Houten property at the time Harmann stopped by as he had gone home to check on his wife and let his dogs out.

Harmann was working this evening with Humberg as other staff from the sheriff's office had taken the night off for the departmental Christmas party, which was held in Panora. Humberg [handwritten: Harmann] then left the Van Houten residence and proceeded with the remainder of his shift.




Harmann then left the area on the western side of the county and proceeded towards Humberg when hearing Humberg was attempting to locate a utility vehicle near Harmann's residence. Harmann stopped by the sheriff's office on his way to Humberg's location to drop off the civil papers he had picked up earlier in his shift to attempt to serve.

While driving towards Humberg, Wheatley called Harmann inquiring what Humberg was doing. Harmann did not think this was unusual as Wheately calls often and at that time he had no reason to believe Wheately was involved with the incident. Harmann explained to Wheatley what Humberg was doing, and the call ended.

As Harmann left the office, dispatch advised the utility vehicle Humberg had located belonged to Wheatley. Harmann stated this didn't make sense to him since Wheatley was supposed to be at a wedding and the utility vehicle had been used during the day while hunting deer. Harmann called Wheatley back a few times during this incident but exactly when in the timeline is unclear. Harmann asked Wheatley what was going on and Wheatley replied "Nothing! Stay out of it" during one conversation. Harmann attempted to contact Wheatley numerous other times, but Wheatley did not answer Harmann's calls.

Upon Harmann's arrival, Porsch went back into service and returned to Panora. Harmann and Humberg both seemed confused by the chain of events and what was going on. Harmann told Humberg it wasn't Wheatley because he was out of town at a wedding and inquired with Humberg if he was sure this was the utility vehicle he was looking for based upon the color not being the same as Humberg had originally called out.

Ultimately, Harmann and Humberg evaluated exactly what the purpose of their actions were and determined their actions to be more of a community caretaking function than an enforcement function. Humberg stated to Harmann no traffic stop was initiated, the driver upon leaving the vehicle was not told to stop and ultimately Humberg was just trying to tell the driver of the utility vehicle he had lost some meat upon entering the roadway.

In consideration for this incident not being directly correlated to a criminal act, Harmann secured Wheatley's utility vehicle in one of his buildings and was picked up by Humberg. Some additional time was spent checking the area for the driver of the utility vehicle, but no one was located. Humberg returned to service and left the area, heading towards Panora.




By this time, Harmann had completed his shift, though he did not go final on the radio, he then parked his patrol vehicle and began to drive the area in his personal vehicle which he described as "distinctive" as it is a large diesel with cab lights. As Harmann was pulling back into his driveway, he noticed a person in the ditch a short distance north of his driveway. Upon approaching the area, Harmann identified this person as Wheatley. Harmann picked Wheatley up and drove him home, approximately 3 miles. Harmann stated he was short and angry with Wheatley, explaining to Wheatley he needed to call Humberg tonight and take responsibility for his actions as well as calling the bosses and telling them what happened. Wheatley exited Harmann's truck and Harmann returned to his residence.

At some point while returning to his residence, Harmann was advised of a structure fire in Panora. Harmann then parked his truck and returned to his patrol car.

Harmann responded to the structure fire in his patrol vehicle and proceeded to handle the call for service. It should be noted that Harmann also serves as the Fire Chief for the City of Panora. While on the fire call, Wheatley called Harmann to talk and Harmann cut him off, telling him to call Humberg. Harmann observed Humberg on his phone while at the fire call and inquired with him afterwards if Wheatley had called him, which Humberg confirmed.

### B. Humberg Interview

Humberg was interviewed on February 20, 2024 regarding his involvement in the December 17, 2023 call for service involving Wheatley Harmann. Humberg's interview took place at his residence in Creston, Iowa. Humberg was advised prior to the start of his interview that his role in this investigation is simply that of a witness. Humberg was provided his employee rights and advisory and signed the form acknowledging these rights.

Humber began his career in law enforcement in 2018 and completed the Iowa Law Enforcement Academy training shortly thereafter. Humber has worked part-time for the Guthrie County Sheriff's Office for approximately two (2) years on a very limited basis. Humberg's shift, on the night in question, was only the second or third patrol shift he had worked for Guthrie County. The other times Humberg worked were related to a music festival and not patrol.

Humberg provided a brief summary of what occurred prior to Harmann's involvement in this incident, as described above in the *purpose of investigation.* Humberg called Harmann shortly after this call for service began seeking guidance about the area and how to proceed. Harmann advised Humberg to check a specific area used by utility vehicles to access Lake Panorama property from his property.




Prior to Harmann's arrival and after learning the utility vehicle was registered to Wheatley, Humberg turned off his body camera. Upon Harmann's arrival, Humberg debriefed Harmann about what actions had been conducted thus far. Humberg stated he had tried to call Wheatley probably five (5) times but was unsuccessful in reaching him. Humberg learned later the number he was calling was Wheatley's work cell phone and not his personal number.

Harmann made a comment to Humberg that Wheatley was out of town at a wedding. Harmann also made comments inquiring if Humberg was sure this was the utility vehicle he had observed because the vehicle had been on his property throughout the day and was used during deer hunting as well as the exhaust was cold to the touch, which Humberg checked as well. Humberg reaffirmed he was sure this was the utility vehicle he had observed approximately one and half miles (1.5) south of here entering the roadway. During their inspection of the vehicle, a heat sealer was found in the side by side along with the gun case. Locating the heat sealer reinforced the utility vehicle was linked to the recovered bucket which contained heat sealed bags of deer meat.

Harmann and Humberg talked through exactly what Humberg had and after confirming this was a community caretaking action and Humberg was simply trying to tell the driver of the utility vehicle that he had lost some meat in a bucket; no criminal act had been committed.

Harmann secured the utility vehicle in a building on his property and we then checked a few more areas of the property and then unable to locate the driver, Humberg left the area.

Humberg was contacted by Wheatley later in the morning during which time Wheatley admits to driving the utility vehicle and panicking. Humberg advises Wheatley he needs to report this to the sheriff's office administration and that he won't lie and Wheatley agrees to do so.

Humberg didn't think Harmann was misleading or deceptive at the time of the call for service. A few days after the fact as rumors started to spread, Humberg began to question Harmann's conduct and if it was appropriate.

### C. Wheatley Interview

Wheatley was interviewed on February 27, 2024 at the law office of Smith & Mills Law in West Des Moines, Iowa with his attorney Skylar Limkemann. Wheatley was provided the notice of his investigation. The interview was scheduled through Wheatley's attorney to ensure compliance with Iowa Code 80F and his right to representation during the investigatory process. The interview was conducted in a conference room at the law office and was audio recorded. The interview began at approximately 1123 hours and concluded at 1349 hours.






Wheatley was advised both verbally and in writing of his employee rights and advisory and acknowledged receipt of these rights and advisory with his signature.

Wheatley acknowledged the events of the evening. Details which relate specifically to the concerns involving Harmann, Wheatley admitted to calling Harmann during the early stages of the call for service and inquiring what Humberg was doing. Wheatley did not tell Harmann at this time that he was on his property.

Wheatley was not as clear as Harmann regarding the number of phone calls between the two. Wheatley admits to walking along the roadside and upon seeing Harmann's truck made himself known to Harmann who took him home.

Wheatley called Humberg later in the night and admitted to operating the utility vehicle and hiding from Humberg because he panicked and was scared.

## V. ANALYSIS & FINDINGS

There are two fundamental questions as it relates to the analysis of Hartmann's behavior relating to this incident. The first is whether or not Harmann interfered with any enforcement action Humberg was attempting to take. The second question is whether Harmann was dishonest or untruthful in the handling of this incident. Lastly and while not a fundamental question, if unacceptable conduct was found to have occurred, a question has been raised as to whether or not Harmann has ever received a copy of the current policies and procedures and what if any training associated with the policies and procedures has occurred.

To answer the first question, Harmann did not interfere with any enforcement action being taken by Humberg because Humberg was not taking any enforcement action. Both through his testimony and in review of the body camera, Humberg's actions in this incident were related to a community caretaking function rather than an enforcement action.

The second question relating to whether Harmann was honest and truthful during this incident is essentially yes. In hindsight, Harmann could have told Humberg about Wheatley calling Harmann while he was in route to the call but because Harmann and Wheatley talk often, this did not necessarily seem out of character. Because this was not known until much later in the time lapse of the incident, not sharing this information with Humberg does not necessarily mean Harmann was attempting to conceal any material facts.



As it relates to the policy manual if a violation of inappropriate conduct would have been substantiated, Harmann asserts he has never received a copy of the policies and procedures. The employer is unable to produce any document with Harmann's signature recognizing acceptance of or training related to the policy manual. Harmann asserts he has never received a copy policy manual and is only in receipt of three (3) total policies. A seatbelt usage policy, a less lethal weapons system policy, and a policy relating to the police service dog.

Harmann's statement relating to Wheatley being out of town for a wedding was true to the best of Harmann's knowledge at the time he made the statement. It was later determined Wheatley's wife was ill with Covid and they did not attend the wedding in Adair that evening but there is no proof indicating Harmann knew this at the time of his statements. At the time of Wheatley's call to Harmann regarding what Humberg was doing, there is no evidence to suggest that Wheatley told Harmann he was on his property.

Harmann initially advised Humberg of the area where utility vehicles frequent near his property, aiding Humberg in locating the utility vehicle and operator. At some point based upon Wheatley's statements to Harmann to the effect of "Stay out of it!" and that "Nothing is wrong" was clearly indicative of some relationship to Humberg's call for service but this was later in the timeframe of the event.

## VI. CONCLUSION

Harmann was not forthcoming with Humberg regarding his contact with Wheatley during the course of this incident. While Harmann did not tell Humberg about his phone conversations with Wheatley, Harmann did advise Wheatley to call Humberg and admit to his involvement in the call for service, which Wheatley did.

Could Harmann have done more to identify the driver of the utility vehicle such as calling others in the hunting party to determine who left the property last driving the utility vehicle? Possibly, was this necessary?

Humberg was not treating this incident as a criminal act but rather a community caretaking act. No traffic stop was initiated or verbal commands given. If Humberg was treating this as a community caretaking function then why deploy rifles and approach the utility vehicle? The fact that Humberg and Porsch approached the utility vehicle with weapons drawn is counterintuitive to handling this call as a community caretaking event rather than a criminal




event and only provides support as to the confusion surrounding this entire event. Humberg's assertion this incident had any relation to poaching is unsupported based upon the information he had at the time and still remains unsupported based upon the evidence known post investigation.

This situation is a direct reflection of a poor decision by Wheatley which further complicated the decision-making process of Humberg and Harmann. Harmann asserts that had a criminal act occurred the situation would have been handled differently, a perimeter would have been established and additional measures would have been implemented to identify the driver.

In the end, Harmann advised Wheatley to contact Humberg, admit to his actions and to contact administration with the sheriff's office and advise them of what had happened as well. If Harmann was attempting to conceal Wheatley's role in this incident, Harmann would not have directed Wheatley to call Humberg or likely admitted to driving Wheatley home during the investigation.

## VII. CURRICULUM VITAE AND EXPERTISE

Jon Thomas currently serves as the Chief of Police for a community in Central Iowa. Mr. Thomas has over twenty-five years of law enforcement experience along with ten years of experience as a labor representative, both nationally and in Iowa. Mr. Thomas holds instructor certifications in a variety of disciplines including firearms, defensive tactics, precision driving, chemical munitions, distraction devices, less lethal weapon systems, de-escalation, fair and impartial policy and others. In addition to his instructor certifications, Mr. Thomas also holds certifications as a *Force Science* Use of Force Analyst and has received additional training as an *Enhanced Force Investigator*. Mr. Thomas has been a part of hundreds of internal affairs investigations regarding officer conduct, use of force, and potential violations of policies and procedures. *Workforce Solutions* provides services to both public and private employers throughout the Midwest.




## VIII. Right to Amend:

*The case review and analysis conducted for this report have been completed based upon documentation and data, evidence provided to me. Should additional information or evidence become available, I reserve the right to amend my opinions and conclusions.*




## EXHIBIT SUMMARY

| Exh | # | Description |
|---|---|---|
| Exh | 1 | Chief Deputy Bennett statement |
| Exh | 2 | Witnesses.Maps |
| Exh | 3 | Radio Logs (written) |
| Exh | 4 | Guthrie County Policy Manual 2017 |
| Exh | 5 | Guthrie County Employee Handbook |
| Exh | 6 | Humberg Incident Narrative |
| Exh | 7 | Porsch Incident Narrative |
| Exh | 8 | Humberg Body Camera |
| Exh | 9 | Guthrie County Radio Traffic Combined Fine 12.17.23 |
| Exh | 10 | Wheatley Interview Video 1.5.24 |
| Exh | 11 | Harmann Original Notice of Investigation |
| Exh | 12 | Harmann Second Notice of Investigation |
| Exh | 13 | Harmann Employee Rights Advisory |
| Exh | 14 | Harmann Interview Audio 2.27.24 |
| Exh | 15 | Harmann Interview Transcript 2.27.24 |
| Exh | 16 | Wheatley Original Notice of Investigation |
| Exh | 17 | Wheatley Second Notice of Investigation 2.26.24 |
| Exh | 18 | Wheatley Employee Rights Advisory |
| Exh | 19 | Wheatley Interview Audio 2.27.24 |
| Exh | 20 | Wheatley Interview Transcript 2.27.24 |
| Exh | 21 | Wheatley Second Interview Audio 3.13.24 |
| Exh | 22 | Wheatley Second Interview Transcript 3.13.24 |
| Exh | 23 | Wheatley Incident Map 1 |
| Exh | 24 | Wheatley Incident Map 2 |
| Exh | 25 | Humberg Employee Rights Advisory |
| Exh | 26 | Humberg Interview Audio 2.20.24 |
| Exh | 27 | Humberg Interview Transcript 2.20.24 |
| Exh | 28 | Porsch Interview Audio 2.21.24 |
| Exh | 29 | Porsch Interview Transcript 2.21.24 |
| Exh. | 30 | Harmann Final Report |